Terence D. Watson (TW0288)
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
*Attorneys for Plaintiff*
*Norman N. Kinel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NORMAN N. KINEL,    x | |
| :                              Plaintiff,    : | |
| :                              : | |
| - against -    : | Case No.:  05 CV 3456 (RCC) (THK) |
| :                              : | |
| SHERMAN ACQUISITION II, LP,    : | |
| SHERMAN ACQUISITION, LP,    : | |
| SHERMAN FINANCIAL GROUP LLC,    : | |
| ALEGIS GROUP L.P., ALEGIS GROUP LLC,  : | |
| TRANSUNION LLC, EXPERIAN    : | |
| INFORMATION SOLUTIONS, INC.,    : | |
| EQUIFAX, HOUSEHOLD BANK (SB), N.A.    : | |
| NORTH AMERICAN COLLECTORS, INC.,    : | |
| WOLFPOFF & ABRAMSON, L.L.P.,    : | |
| FORSTER & GARBUS, FINANCIAL    : | |
| RECOVERY SERVICES, INC., and    : | |
| LEVITZ FURNITURE CORPORATION,    : | |
| :                              : | |
| :                              Defendants.    : | |

---x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
SHERMAN ACQUISITION II, LP, SHERMAN ACQUISITION, LP,
SHERMAN FINANCIAL GROUP LLC, ALEGIS GROUP, LP AND
<u>ALEGIS GROUP LLC 'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## INTRODUCTION

Plaintiff, Norman N. Kinel ("Kinel" or "Plaintiff"), by his counsel, Dreier LLP, respectfully submits this memorandum of law in opposition to defendants Sherman Acquisition II, LP ("SA2"), Sherman Acquisition, LP ("SA"), Sherman Financial Group LLC ("SFG"), Alegis Group ("AGLP") and Alegis Group LLC's ("AGLLC") (collectively, "Defendants" or "Sherman Defendants") motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (the "Joint Motion"). As demonstrated below, the Joint Motion should be denied because the Amended Complaint alleges sufficient facts to entitle Plaintiff to relief on claims asserted against each of the Sherman Defendants.

As set forth in detail below, this action relates to Plaintiff's attempts to stop improper and unconscionable debt collection activity against him in connection with an invalid debt, and to remove a false and negative trade line that appeared on reports concerning his consumer credit history. As alleged in the amended complaint filed in this action (the "Amended Complaint"), certain of the Sherman Defendants retained at least four (4) separate debt collectors in an attempt to collect the alleged debt (the "Alleged Debt") from Plaintiff.[1] Plaintiff disputed the Alleged Debt to each of the debt collectors the Sherman Defendants retained for the purpose of attempting to collect the Alleged Debt, including multiple written disputes sent via certified mail,

---

[1] Without yet having had an opportunity to commence formal discovery, it is uncertain exactly how each of the Sherman Defendants was involved in the efforts to collect and report the Alleged Debt. Indeed, counsel for the Sherman Defendants himself appears confused by the purposeful complexity of the Sherman Defendants' corporate structure. For example, counsel for the Sherman Defendants initially claims that "[n]either SALP or SFG acquired the Account or had anything to do with it." (Joint Motion at p. 2). However, in the very next paragraph, counsel for the Sherman Defendants states that "North American Collectors, Inc. ("NAC") sent a collection letter to Kinel setting forth *that SALP had purchased the account*." (Joint Motion at p. 3) (emphasis added). In fact, SALP's involvement with the "Account" is further confirmed by multiple collection notices received by Plaintiff (*see* Exhibits L and T to the Amended Complaint), and consumer credit reports listing the alleged debt. (*See* Exhibits N, O and R to the Amended Complaint). Indeed, certain "privacy notices" sent to Plaintiff by certain of the debt collectors retained by the Sherman Defendants confirm that the notices were sent on behalf of <u>each</u> of the Sherman Defendants.

which also advised the debt collectors that Plaintiff was being represented by an attorney.  (*See* Amended Complaint at ¶¶ 50, 59, 72, and 79, and Exhibits J and U).  Significantly, certain consumer protections provided under the federal Fair Debt Collection Practices Act ("FDCPA") come into play after a consumer disputes the validity of a debt sought to be collected.  For example:

- Section 1692c(c) prohibits communications with a consumer after the consumer notifies the debt collector in writing that he or she refuses to pay the debt, other than to inform the consumer:  (a) that further collection efforts are being terminated, (b) that the debt collector or creditor may invoke specific remedies, or (c) that the debt collector or creditor intend to invoke specific remedies;

- Section 1692g(b) requires a debt collector to cease all collection efforts after a consumer disputes a debt in writing, unless the debt collector obtains verification of the debt and provides the consumer with a copy of such verification;

- Section 1692e(8) makes unlawful a debt collector's failure to communicate that a debt is disputed;

- Section 1692c(a)(2) prohibits debt collectors from communicating with a consumer if it knows that the consumer is represented by an attorney.

Despite these prohibitions, rather than cease collection efforts, cease direct contacts with Plaintiff, or provide verification of the Alleged Debt, the Sherman Defendants simply retained a new debt collector each and every time Plaintiff disputed the Alleged Debt.  In addition, the Sherman Defendants, some of which are alleged to be "furnishers" of information to credit reporting agencies, never notified any credit reporting agencies that the Alleged Debt was

disputed.[2]

Moreover, the Sherman Defendants authored certain "privacy notices" that were included in two of the collection notices received by Plaintiff related to the Alleged Debt.[3]  These privacy notices evidence an intent by the Sherman Defendants to communicate in connection with the collection of the Alleged Debt with persons other than Plaintiff, his attorneys, or credit reporting agencies, without Plaintiff's consent, and in violation of section 1692c(b) of the FDCPA.

Finally, the Sherman Defendants also failed to conduct an investigation regarding the validity of the Alleged Debt after they received notice from consumer reporting agencies regarding Plaintiff's dispute of the Alleged Debt, in violation of section 15 U.S.C. § 1681s-2b(1) of the FCRA.

The Sherman Defendants first seek to escape liability for their multiple violations of the FDCPA by arguing that they are not "debt collectors," and therefore are not subject to the FDCPA.  This claim is wholly without merit and is belied by the well-established case law discussed below which deems entities that regularly purchase delinquent debts as "debt collectors" within the meaning of, and subject to, the FDCPA.

---

[2] The consumer credit reports that are attached to the Amended Complaint provide no more than a "snap-shot" of the reporting that took place in connection with the Alleged Debt.  Accordingly, based on the collective collection efforts undertaken by the Sherman Defendants, including the retention of debt collectors for the purpose of collecting the Alleged Debt on behalf of multiple Sherman Defendants, further discovery is likely to prove that each of the Sherman Defendants are "furnishers" of information to consumer credit reporting agencies, and subject to the federal Fair Credit Reporting Act ("FCRA").  Thus, counsel for the Sherman Defendants' claim that Plaintiff "could have easily" verified which Sherman Defendant furnished information to credit reporting agencies over the past five years, prior to formal discovery taking place in this action, is simply ridiculous.  In any event, the Sherman Defendants have already admitted that SA2 and SALP are "furnishers" of information to consumer credit reporting agencies, and subject to the FCRA.  (*See* Joint Motion at p. 11 n. 4).

[3] Plaintiff concedes that the claim related to the privacy notice sent by NAC is barred by the applicable statute of limitation and its inclusion in Plaintiffs' Amended Complaint was inadvertent.

Next, the Sherman Defendants argue that the "privacy" notices they prepared which, at a minimum, threaten to disclose information in violation of the FDCPA, are nevertheless not violative of the FDCPA because the disclosures are purportedly consistent with the separate and distinct Gramm-Leach Bliley Act ("GLB").  The Sherman Defendants' assertion of this argument is both remarkable and troubling because this same argument has already been rejected in a case in which the Sherman Defendants themselves were parties.

Finally, the Sherman Defendants seek dismissal of Plaintiff's FCRA claims that they failed to conduct an investigation after they received notice that Plaintiff disputed the Alleged Debt.  The Sherman Defendants argue that they are entitled to have this claim dismissed on the pleadings because their obligation to conduct an investigation arises upon receipt of notice from a consumer reporting agency.  This argument is almost laughable because it completely ignores the allegations in the Amended Complaint, and the attached exhibits, which *prove* that Plaintiff *repeatedly* disputed the Alleged Debt to *multiple* credit reporting agencies, in writing sent via certified mail, no less.  (*See* Amended Complaint at ¶¶ 88, 93, 94 and Exhibits M, O, P and Q).  More importantly, the Sherman Defendants say *nothing* about any investigation they undertook following their receipt of the notices from the consumer reporting agencies regarding Plaintiff's dispute of the Alleged Debt.  Thus, Plaintiff's suspicion that no investigation was undertaken by any of the Sherman Defendants appears to be well founded.

Similarly, while the Sherman Defendants repeatedly claim that Plaintiff did not dispute the Alleged Debt to the Sherman Defendants ("Kinel never disputed the account with any of the Sherman Defendants" (Joint Motion at p. 5); "the Sherman Defendants never received a dispute from Kinel" (Joint Motion at p. 13)), they are suspiciously silent on the issue of whether or not they had knowledge of Plaintiff's *multiple* disputes to the debt collectors they retained.  Indeed,

no explanation is provided for the Sherman Defendants' retention of multiple debt collectors to attempt to collect the Allege Debt, including the retention of three debt collectors during a five month period.  The Sherman Defendants' silence on this issue speaks volumes.  Moreover, the Sherman Defendants' failure to conduct an investigation despite knowledge of Plaintiff's dispute, and after years of retaining multiple debt collectors in order to avoid their obligation  to verify the Alleged Debt, evidences a willful failure to conduct an investigation which, when proven, will subject the Sherman Defendants to punitive damages.  *See* 15 U.S.C. § 1681n (a) (2).

Accordingly, as demonstrated below, the Joint Motion must be denied because Plaintiff has alleged sufficient facts to support each of the claims asserted against the Sherman Defendants and in the context of the Joint Motion, each of these allegations must be taken as true.

## FACTUAL BACKGROUND

As alleged in the Amended Complaint, the Alleged Debt relates to Plaintiff's attempt to purchase a chair and matching ottoman (the "Items") from Defendant Levitz' ("Levitz") store located at 429 U.S. Highway 1 in Iselin, New Jersey (the "Store") on October 23, 1999 (the "Alleged Debt").[4]  Plaintiff returned the Items to Levitz at the Store on October 31, 1999 to be repaired or replaced because they were grossly defective.  Levitz accepted the Items and gave Plaintiff a repair order.[5]

---

[4] Levitz recently file a petition for relief under Title 11 of Chapter 11 of the Unites States Code.  Accordingly, service of these papers upon Levitz is for informational purposes only.

[5] Except for the sales tax, the purchase price for the Items was charged to a Levitz credit card that was issued in Plaintiff's name by defendant Household Bank (SB) N.A. ("Household") at the same time Plaintiff attempted to purchase the Items.

Plaintiff immediately contacted Levitz in an attempt to learn what action Levitz intended to take regarding the defective Items.  However, Plaintiff's multiple messages left over a period of more than a month with a Levitz Branch Manager were never responded to.  Consequently, by letter dated December 3, 1999, Plaintiff requested a full refund of the purchase price of the defective Items.

Plaintiff received no response to his request for a refund.  Moreover, Defendant Levitz never repaired or offered to provide Plaintiff with replacements for the defective Items.  Indeed, the Items, even in their defective state, were *never returned* to Plaintiff.

Consequently, by letter dated January 20, 2000, Plaintiff objected to a charge for the Items that appeared on his Levitz credit card that was issued by defendant Household, and demanded that the charge be removed and that his account be credited in an amount equal to the purchase price of the Items.  Household responded by letter dated February 1, 2000, claiming that it could not complete its investigation of Plaintiff's dispute without a credit slip, even though it knew full well that Plaintiff was given a repair order form, rather than a credit slip.

By letter dated February 7, 2000, Plaintiff informed Household that no credit slip was ever issued by Levitz.  Plaintiff further advised Household that Levitz accepted return of the Items and had never contacted Plaintiff or responded to his phone calls and correspondence. Plaintiff also repeated his request for a full refund of the purchase price of the defective Items. However, rather than provide Plaintiff with a refund, Household sold or otherwise transferred its interest in the Alleged Debt to certain of the Sherman Defendants.

As set forth in the Amended Complaint and further discussed below, Plaintiff has been continuously harassed by multiple debt collectors retained by the Sherman Defendants, which systematically retained a new debt collector each time Plaintiff disputed the Alleged Debt,

thereby subjecting Plaintiff to years of harassment and causing Plaintiff significant injuries and damages.

1.      **The Sherman Defendants Retain Defendant North American Collectors To Collect The Alleged Debt**

On or about November 17, 2003, Defendant North American Collectors ("NAC") sent Plaintiff a collection notice related to the Alleged Debt.  (*See* Exhibit G to Amended Complaint). The collection notice sent by NAC states that it was sent on behalf of Defendant SA.  *Id.* Plaintiff notified NAC that it disputed the Alleged Debt.  Defendant NAC continued its efforts to collect the Alleged Debt on behalf of Defendant SA by notices dated January 16, 2004 and April 19, 2004, despite Plaintiff disputing the validity of the debt.  *See* Exhibit H to Amended Complaint.

2.      **The Sherman Defendants Then Retain Defendant Wolpoff & Abramson To Collect The Alleged Debt**

Despite the fact that Plaintiff had already disputed the Alleged Debt to NAC, on or about August 13, 2004, defendant Wolpoff & Abramson ("W&A") sent Plaintiff another collection notice related to the Alleged Debt, which did not indicate that Plaintiff had previously disputed the Alleged Debt.  *See* Exhibit I to Amended Complaint.  The collection notice sent by W&A sought to collect the Alleged Debt - - this time on behalf of Defendant SA2, rather than SA. Like he did when he received NAC's collection notice, Plaintiff disputed the Alleged Debt, this time by a letter, sent via certified mail, dated September 24, 2004 (the "September 24th Letter"), a true and correct copy of which is attached as Exhibit J to the Amended Complaint.

The September 24th Letter not only disputed the Alleged Debt, but also included copies of Plaintiff's prior correspondence to Levitz.  *See* Exhibit J.  Moreover, the September 24 Letter specifically advised that "all further correspondence regarding this matter shall be directed to

[Plaintiff's counsel] and that there should be no "further contact with [Plaintiff] directly."  *See*

Exhibit J.[6]

### 3.    The Sherman Defendants Then Retain Defendant Forster & Garbus To Collect The Alleged Debt

Despite the fact that Plaintiff had already disputed the Alleged Debt to NAC and W&A,

and requested that all further communications be directed to his attorney, on or about October

19, 2004, Defendant Forster & Garbus ("F&G") sent Plaintiff yet another collection notice

related to the Alleged Debt.  *See* Exhibit K to Amended Complaint.  The collection notice sent

by F&G states that it was sent on behalf of Defendants SA2 and SFG.  Plaintiff's counsel, on

behalf of Plaintiff, notified Defendants F&G that the Alleged Debt was disputed.

### 4.    The Sherman Defendants Then Retain Defendant Financial Recovery Services To Collect The Alleged Debt

Despite the fact that Plaintiff had already disputed the Alleged Debt to NAC, W&A, and

F&G, on or about January 17, 2005, Defendant Financial Recovery Services, Inc. ("FRS") sent

Plaintiff yet another collection notice related to the Alleged Debt.  *See* Exhibit L to Amended

Complaint.  The collection notice sent by FRS states that it was sent on behalf of Defendant SA.

By notice dated March 17, 2005, a copy of which is attached as Exhibit T to the Amended

Complaint, FRS sent a second collection notice to Plaintiff regarding the Alleged Debt.  By letter

dated March 30, 2005, Plaintiff's counsel disputed the validity of the Alleged Debt on behalf of

the Plaintiff.  *See* Exhibit U to Amended Complaint.

---

[6] Remarkably, while the Sherman Defendants seek the dismissal of claims by arguing, in effect, that W&A did not notify them that Plaintiff disputed the Alleged Debt, W&A in turn has a pending motion to dismiss in which it argues that it was not obligated to notify the Sherman Defendants that Plaintiff disputed the Alleged Debt, even though W&A was retained by the Sherman Defendants.  W&A's position is clearly based on its desire to maintain its business relationship with the Sherman Defendants.  In any event, the position is nonsensical because the consumer protections under the FDCPA which come into play when a consumer disputes a debt cannot be eliminated by a debt collector (whose conduct is governed by the FDCPA) keeping secret the fact that a consumer has disputed a debt.

Based on the foregoing, and as alleged in the Amended Complaint, the Sherman Defendants retained at least four (4) separate debt collectors in an attempt to collect the Alleged Debt.  More importantly, the Sherman Defendants retained a new debt collector to attempt to collect the Alleged Debt *each time* Plaintiff disputed the Alleged Debt in an effort to deny Plaintiff his protections under the FDCPA.[7]

What is more, during this entire ordeal, the Alleged Debt appeared as a negative trade line on consumer credit reports concerning Plaintiff that were maintained and published by the consumer credit reporting agencies that were named as defendants in this action (the "Credit Reporting Agency Defendants") and caused Plaintiff to suffer, among other things, significant damage to his credit rating and his ability to obtain credit.  Significantly, none of the consumer credit reports concerning Plaintiff that were maintained by the Credit Reporting Agency Defendants indicated that Plaintiff *ever* disputed the Alleged Debt, despite the undisputed fact that Plaintiff *repeatedly* disputed the Alleged Debt to *each* of the debt collectors that sought to collect the Alleged Debt.

## ARGUMENT

### A.    The Standard Applicable To The Motion To Dismiss

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard as a Rule 12(b) (6) motion to dismiss.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). "A court may dismiss an action pursuant to Rule 12(b)(6) only if it appears beyond doubt,

---

[7] To be clear, Plaintiff was harassed by debt collectors retained by the Sherman Defendants in connection with the Alleged Debt long before he disputed the Alleged Debt to NAC.  In fact, Plaintiff received telephone calls at his home, on his cell phone, and at his office from debt collectors seeking to collect the Alleged Debt for years. Plaintiff repeatedly disputed the validity of the Alleged Debt during each and every one of these telephone discussions.   Plaintiff began to submit written objections when it became apparent that those which he orally communicated were being ignored by the debt collectors.

even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Redhead v. Winston v. Winston*, 2002 WL 31106934, *2 (S.D.N.Y.) (citation omitted).  "Accordingly, a court considering a Rule 12(c) motion must accept as true the factual allegations set forth in the complaint." *Castro v. ARS National Services, Inc.*, 2000 WL 264310, *1 (S.D.N.Y.).  Furthermore, "all reasonable inferences must be drawn in favor of the non-movant." *Id*.  In addition, "[i]n the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief." *Chapman v. Worldwide Asset Management, L.L.C.*, 2005 WL 818880, *2 (N.D.Ill.).   Moreover, "[t]here is a strong presumption against dismissing an action for failure to state a claim." *Perez v. Telecheck Services, Inc.,* 208 F.Supp.2d 1153, 1155 (D.NV. 2002) (citation omitted).  "Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief." *Id*. (Citation omitted).  Finally, "[n]o claim will be dismissed unless it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Blair v. Sherman Acquisition*, 2004 WL 2870080 * 2 (N.D. Ill.).

**B.**	**The Sherman Defendants Are Debt Collectors And Subject To The FDCPA**

The Sherman Defendants first attempt to avoid liability in this action by arguing that none of them are "debt collectors" within the meaning of the FDCPA, and that none of them are subject to the FDCPA.[8]  The Sherman Defendants cannot be so easily excused for their

---

[8] Section 1692a of the FDCPA provides in part that:

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

misconduct over the past five years.

As an initial matter, Plaintiff has alleged that each of the Sherman Defendants is a debt collector, and these allegations must be taken as true. *Castro v. ARS National Services, Inc.*, 2000 WL 264310, *1 (S.D.N.Y.). Moreover, courts have repeatedly held that a company that regularly purchases delinquent debts, such as the Sherman Defendants, is a "debt collector" within the meaning of the FDCPA with respect to the delinquent debts. *Schlosser v. v. Fairbanks Capital Corp.*, 323 F.3d 534, 536-37 (7th Cir. 2003); *Pollice v. Nat'l Tax Funding*, 225 F. 3d 379 (3d Cir. 2000); *Munoz v. Pipestone Financial*, LLC, 2005 WL 2837527 * 4 (D. Mn.); *Chapman v. Worldwide Asset Management*, L.L.C., 2005 WL 818880 *3 (N.D. Ill.); *Scally v. Hilco Receivables, LLC*, 392 F. Supp.2d 1036, 1037 (N.D. Ill.) ("[a]ssignees of debt already in default are considered debt collectors and are subject to the FDCPA").

As noted by the court in *Chapman*, which, like here, involved a defendant's motion to dismiss for failure to state a claim, "even the conclusorily allegations that both defendants are debt collectors as defined by the FDCPA would have been sufficient absent specific allegations to the contrary (citations omitted). Furthermore, an entity that purchases the debts of others when the debts are already in default may qualify as a debt collector." *Chapman,* 2005 WL 818880 at *3.

The <u>one</u> <u>and</u> <u>only</u> case cited by the Sherman Defendants (*Scally v. Hilco Receivables, LLC*, 392 F. Supp.2d 1036 (N.D. Ill.)), does not change this result. The plaintiff in *Scally* asserted FDCPA claims against the creditor and a debt collector retained to collect the debt. The creditor argued that it was not a debt collector, and not subject to the FDCPA. There, the issue of whether the creditor was a debt collector was resolved in the context of a motion for summary judgment. Significantly, the court ruled that the creditor could not be held vicariously liable for

FDCPA violations for the conduct of the debt collector it retained because of the lack of evidence (presumably following extensive discovery), of any control the creditor exerted over the collection activities of the debt collector, including the right to control the content of the collection notices sent by the debt collector:

> Scally offers no facts suggesting that Hilco [the creditor/defendant] controlled either the mechanisms or the content of MRS's contact with debtors, other than to outline general principals by which MRS would abide: *i.e.*, observing the requirements of the FDCPA.
>
> \*          \*          \*
>
> Finally, Scally fails to offer any evidence suggesting that Hilco exerted control or had the contractual right to assert control over the content of the allegedly infringing collection letter MRS mailed to Scally.

392 F.Supp.2d at 1040.

Counsel for the Sherman Defendants conveniently omits any mention of the *Scally* court's repeated reliance on the creditor's lack of control over the content of the debt collector's communications with the consumer, for obvious reasons.  Here, the Sherman Defendants have already conceded that they had the requisite control over the content of the collection notices sent by the debt collectors they retained.  *See* Joint Motion at p. 8 ("the Sherman Defendants have altered the privacy notice that collection firms/agencies send out on their behalf").  Indeed, counsel for the Sherman Defendants has further conceded the Sherman Defendants' control over the debt collectors by acknowledging that "[e]ach collection agency/firm was given _limited authority_" (Joint Motion at p. 6 emphasis added), which confirms that the Sherman Defendants

retained the majority of authority for themselves.[9]  The Sherman Defendants' control over the conduct of the debt collectors is further confirmed by filing the Joint Motion, which seeks the dismissal of certain claims asserted against the debt collectors.  In any event, at this stage of this action, there is no way for Plaintiff, or the Court, to determine, for example, the frequency in which conference calls or other communications took place between the Sherman Defendants and the debt collectors.  Indeed, discovery is likely to show that the Sherman Defendants exerted sufficient control over the debt collectors to be subject to the FDCPA as debt collectors themselves.  Accordingly, based on the concessions of the Sherman Defendants alone, the Sherman Defendants are not entitled to the dismissal of any of the FDCPA claims asserted against them.

## C.  Privacy Protections under the FDCPA

One of the stated purposes of the FDCPA is to protect consumers against "invasions of individual privacy" by debt collectors.  15 U.S.C. §1692(a).  Accordingly, the FDCPA contains multiple provisions that prevent debt collectors from informing third parties that a given individual owes a debt.[10]

---

[9] Discovery is likely to prove that the Sherman Defendants had the requisite amount of control over the debt collectors they retained to establish an agency relationship between the Sherman Defendants are their debt collectors.  *See Nuevo Mundo Holdings v. Pricewaterhouse Coopers, LLP,* 2004 WL 112948 (S.D.N.Y.). Significantly, once an agency relationship is established, the Sherman Defendants will be unable to deny having knowledge of Plaintiff disputing the Alleged Debt.  *NYU v. First Financial Insurance Co.*, 322 F.3d 750, 753 n. 2 (2d Cir. 2003) ("the general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it") (citation omitted).  Again, the Sherman Defendants' failure to conduct an investigation despite knowledge of Plaintiff's dispute, and after years of retaining multiple debt collectors in order to avoid their obligation to verify the Alleged Debt, evidences a willful failure to conduct an investigation which, when proven, will subject the Sherman Defendants to punitive damages.  *See* 15 U.S.C. § 1681n (a) (2).

[10] "The FDCPA generally protects the consumer's privacy by limiting debt collector communications about personal affairs to third parties…."  FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097 (Dec. 13, 1988), at 50103.

First, 15 U.S.C. §1692c (b) contains a general prohibition against debt collectors communicating with third parties without the prior consent of the consumer:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.[11]

As stated by the court in *Blair*, "the statute clearly reads that in connection with the collection of a debt, there may not be communications with unauthorized third parties."  2004 WL 2870090 at * 4.

Second, 15 U.S.C. §1692d (3) and (4) define as "harassment" and a violation of the FDCPA "[t]he publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a (f) or 1681b (3) of this title" and the "advertisement for sale of any debt to coerce payment of the debt."[12] These provisions prohibit debt collectors from disclosing that specific consumers have defaulted on debts, without the express prior consent of the consumer.

In addition to regulating the actual communication of information concerning the debt, the FDCPA also prohibits a debt collector's statement that it may engage in such communication or has the right to do so.  To that end, section 1692e provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

---

[11] Section 1692b deals with locating debtors who cannot be found.

[12] Section 1681a (f) is the FCRA definition of consumer reporting agency, and section 1681b (3) is a FCRA provision dealing with use of consumer reports.

(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

Accordingly, a debt collector's misrepresentation of its legal rights violates the FDCPA. *Juras v. Aman Collection Service, Inc*., 829 F.2d 739, 743-44 (9th Cir. 1987).

The Amended Complaint sufficiently alleges that the privacy notice authored by the Sherman Defendants and sent to Plaintiff by Defendant F&G violates each of the afore-mentioned provisions of the FDCPA.

**D.    The Privacy Notices Sent By
       <u>Defendant F&G Violates The FDCPA</u>**

As alleged in the Amended Complaint, and demonstrated below, the privacy notice sent to Plaintiff by Defendant F&G and on behalf of the Sherman Defendants (the "Privacy Notice") violated multiple provisions of the FDCPA.

The Privacy Notice sent by Defendant F&G, which is attached as Exhibit K to the Amended Complaint, states that SFG and its affiliates, including SA and SA2, collect information regarding consumers:

Information we receive from your account file at the time we purchase your account. Information you may give us on applications, questionnaires or through discussions with you. Information about your transactions with any of the companies within the Sherman Financial Group LLC family of companies. Information we receive from consumer reporting agencies and other third party information providers such as public records and databases [sic] providers containing publicly available data about you.

*See* Exhibit K to Amended Complaint.

15

The F&G Privacy Notice then states that the collected information will be shared with

persons other than Plaintiff, his attorney, and consumer credit reporting agencies:

> We restrict access to nonpublic personal information about you to
> those employees who need to know such information and certain
> third party services providers who provide support services to us . .
> . Sometimes we use other companies to provide services for us
> (such as services relating to our efforts to effect, administer or
> enforce any transaction between you and us).  We chose those
> companies very carefully.  They must keep the information we
> share with them safe and secure and we do not allow them to use
> or share the information for any purpose other than the job they are
> hired to do.

*See* Exhibit K to Amended Complaint.

The disclosures listed on the Privacy Notice are prohibited by the FDCPA, in that they

are with persons other than "the consumer, his attorney, a consumer reporting agency if

otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debtor

collector."  Actual disclosures of that nature would violate 15 U.S.C. §1692c, and the statement

that the Sherman Defendants or its affiliates would make such disclosures, or has the right to do

so, violates 15 U.S.C. §1692e.

In addition, several of the disclosures listed on the Privacy Notice amount to the

publication of lists of persons who have allegedly refused to pay debts, and either still have not

paid or were ultimately induced to pay.  The actual publication of such lists would violate 15

U.S.C. §1692d, and the statement that the Sherman Defendants their affiliates will do so or has

the right to do so violates 15 U.S.C. §1692e.

For example, debt collectors have been known to sell lists of persons who have not paid

their debts to issuers of subprime credit cards, who offer to issue a credit card if the consumer

will put some or all of the unpaid debt on the credit card.  Prospective lenders are not among the

parties to whom a debt may be disclosed under 15 U.S.C. §1692c.  Discovery is likely to prove

that the Sherman Defendants do in fact sell their debtor information to subprime credit card issuers, who offer the debtors new credit cards if they use them to pay the old debt, and that this is done without the express prior consent of the debtors.

In *Blair*, the court refused to dismiss the plaintiff's claim that the privacy notices authored by the Sherman Defendants violated the FDCPA. The provisions contained in the notice at issue in *Blair* are substantially similar to the provisions contained in the Privacy Notice sent to Plaintiff by F&G. Specifically, in connection with the claim of improper communications to third parties, the provision at issue in *Blair* provided that the Sherman Defendants:

> may enter into agreements with other providers of financial products and services, where those providers may perform services for Sherman Companies, or may join with Sherman Companies to provide products and services to current and former customers.

2004 WL 2870080 at * 1. Based on this provision alone, the court in *Blair* ruled that it was "required to consider Plaintiffs' claim," and denied the Sherman Defendants' motion to dismiss. *Id*. at * 4. The Privacy Notice sent to Plaintiff by F&G similarly evidences at intent to communicate with third parties in connection debt collection:

> We restrict access to nonpublic personal information about you to those employees who need to know such information and certain third party services providers who provide support services to us . . . Sometimes we use other companies to provide services for us (such as services relating to our efforts to effect, administer or enforce any transaction between you and us).

*See* Exhibit K to Amended Complaint.

Likewise, in *Chapman v. Worldwide Asset Management, L.L.C.*, 2005 WL 818880 (N.D. Ill.), the court held that a privacy notice that indicated that the debt collector "may disclose [the] information to third parties, including financial services providers, retailers and direct marketers . . . and nonaffiliated third parties as permitted by law," violated section 1692c (b) of the

FDCPA which prohibits debt collectors from communicating with third parties without the prior consent of the consumer.  2005 WL 818880 at * 4 ("[t]he privacy notices states that defendants will engage in communications other than the type permitted by the aforementioned sections of the FDCPA").

Moreover, the provision entitled "No sharing of information" that appears on the privacy notice sent to Plaintiff by F&G does not permit the Sherman Defendants (or F&G) to escape liability.  At best, this provision is inconsistent with the provision evidencing an intent to communicate with third parties, and under such circumstances, a violation of the FDCPA results where one interpretation or provision is violative of the FDCPA.  *See Russell v. Equifax*, 74 F.3d 30 (2d Cir. 1996).  Moreover, as recognized by the court in *Chapman*, the simple inclusion of a provision providing that disclosures will only be made "as permitted by law" does not shield a debt collector from liability.  2005 WL 818880 at *4 ("[t]his qualification does not prevent a violation of section 1692e").

The Sherman Defendants' second argument is that the threatened disclosures set forth in the privacy notices are "required" by the Gramm-Leach-Bliley Act, 15 U.S.C. §6802 ("GLB"), which applies to communications by "financial institutions". (*See* Joint Motion at p. 9-10).  As the Sherman Defendants well know, this argument is based on a gross misreading of the GLB and is frivolous, particularly when none of the Sherman Defendants is a "financial institution". Indeed, this same argument has already been rejected in an action in which all of the Sherman Defendants were parties.

In *Blair v. Sherman Acquisition*, 2004 WL 2870080 (N.D. Ill.), the Sherman Defendants argued against FDCPA claims, like they do here, because the privacy notices "are in compliance with the [GLB], as well."  2004 WL 2870090 at * 4.  After citing to the unreported decision of

*Stewart v. Asset Acceptance*, the court in *Blair* summarily dismissed the Sherman Defendants' argument because "the GLB is irrelevant to this Motion to Dismiss because the Complaint asserts a violation of the FDCPA, not the GLB." *Id.*

This argument was also rejected in *Chapman v. Worldwide Asset Management*, L.L.C., 2005 WL 818880 (N.D. Ill.), where the defendant argued that "there can be no violation of the FDCPA because the dissemination of such information and the opt-out requirement are consistent with the GLB." 2005 WL 818880 at * 4-5.  As the Court stated:

> Just because conduct does not violate one statute does not automatically mean that the conduct does not violate other statutes. Defendants point to no reason why the GLB should be considered to have amended the FDCPA so as to delete some of its provisions. The FDCPA pertains specifically to communications related to debt collecting; the GLB does not.  There is no basis for holding that the previously discussed provisions of the FDCPA are inapplicable to the privacy policy notices sent by defendants.
>
> Plaintiff has adequately alleged a violation of the FDCPA.

*Id.*

Based on the foregoing, Plaintiff has adequately alleged violations of the FDCPA in connection with the privacy notice sent by Defendant F&G on behalf of the Sherman Defendants.

**E.     Plaintiff Has Properly Asserted
          <u>Claims Under The FCRA</u>**

Plaintiff has not asserted a claim against any of the Sherman Defendants for their violation of 15 U.S.C. § 1681s-2(a) because section 1681s-2(d) provides that "subsection (a) shall be enforced exclusively under section 621 [§ 1681s] by the federal agencies and officials and the State officials identified in that section."  Accordingly, the Sherman Defendants do nothing more than slay a straw-man in raising issues with respect to the purported accuracy of

the information the Sherman Defendants furnished to consumer credit reporting agencies.  In any event, any argument that Plaintiff somehow waived his right to return the Items pursuant to any terms in a purchase order was waived by Levitz's acceptance of the Items when they were returned by Plaintiff to be repaired or replaced.

More to the point, Plaintiff has adequately pleaded sufficient facts to assert claims against the Sherman Defendants for their negligent or willful failure to conduct an investigation into the Alleged Debt after receiving notice of the Plaintiff's dispute of the Alleged Debt from the Credit Reporting Agency Defendants, as required under section 1681s-2b.  Moreover, the Sherman Defendants have conceded that "to state a valid claim under 15 U.S.C. § 1681s-2b [of the FCRA] the consumer must first dispute the information with the CRA [consumer credit reporting agency]."  (*See* Joint Motion at p. 13).  The Amended Complaint makes clear that Plaintiff repeatedly disputed the Alleged Debt to multiple credit reporting agencies, by certified mail. (*See* Amended Complaint at ¶¶ 88, 93, 94 and Exhibits M, O, P and Q).  Accordingly, the Amended Complaint clearly alleges claims for either the negligent or willful violation of 15 U.S.C. § 1681s-2b.

Nevertheless, the Sherman Defendants somehow go onto to argue that Counts 11 and 12 of the Amended Complaint (which allege that the Sherman Defendants either negligently or willfully failed to conduct an investigation after receiving notice of Plaintiff's dispute from credit reporting agencies), should be dismissed, without *ever* mentioning that *any* investigation was undertaken.  Similarly remarkable is counsel for the Sherman Defendants' statement that "the Sherman Defendants never received a dispute *from Kinel*."  (*See* Joint Motion) (emphasis added).  The careful wording of this statement confirms Plaintiff's belief that the Sherman Defendants were notified about Plaintiff's dispute of the Alleged Debt by certain, if not all of

debt collectors they retained in an effort to collect the Alleged Debt.  More importantly, the

Sherman Defendants' failure to conduct an investigation after receiving notice of Plaintiff's

dispute from the credit reporting agencies, and after five years of retaining multiple debt

collectors in order to avoid their obligation to verify the Alleged Debt to Plaintiff, evidences a

willful failure to conduct an investigation, sufficient to subject the Sherman Defendants to

punitive damages under 15 U.S.C. § 1681n (2).

Based on all of the foregoing, the Joint Motion:  (i) should be denied with respect to the

FDCPA claims asserted against the Sherman Defendants (Counts 3, 4, 5, 6, 7, 8, and 9), with the

exception of the part of Count 3 related only to the privacy notice sent by NAC, because the

Sherman Defendants are debt collectors within the meaning of, and subject to the FDCPA, and

(ii) should also be denied with respect to the FCRA claims asserted against the Sherman

Defendants (Counts 11 and 12) because, quite simply, Plaintiff disputed the Alleged Debt to

multiple consumer credit reporting agencies, and the Sherman Defendants never dispute the

allegation that they failed to conduct any investigation after being notified - - by the consumer

credit reporting agencies - - that Plaintiff disputed the Alleged Debt.  The failure to conduct any

investigation after repeatedly retaining different debt collectors to avoid, among other things, the

obligation to verify the Alleged Debt, proves a willful failure to investigate the Alleged Debt,

and subjects the Sherman Defendants to punitive damages.

## <u>CONCLUSION</u>

Based on all of the foregoing, the Joint Motion should be denied because, among other

reasons, the Amended Complaint alleges sufficient facts to support the claims that:  (1) the

Sherman Defendants are debt collectors and subject to the FDCPA, (2) the Privacy Notice sent

by F&G violated the FDCPA, and (3) the Sherman Defendants failed to conduct an investigation

after being notified of Plaintiff's dispute, in violation of the FCRA.

      WHEREFORE, Plaintiff requests the entry of an Order denying the Joint Motion as set forth above, and granting Plaintiff other relief deemed equitable and just.

Dated:     New York, New York
            December 12, 2005

                                 DREIER LLP

                            By:  /s/ Terence D. Watson
                                Terence D. Watson (TW0288)
                                499 Park Avenue
                                New York, New York 10022
                                (212) 328-6100
                                *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Terence D. Watson, hereby certify that on December 12, 2005, the foregoing was served on the persons on the attached service list by U.S. Mail.

/s/ Terence D. Watson
Terence D. Watson

## SERVICE LIST

| NAME | DEFENDANT |
|---|---|
| | |

Jonathan D. Elliott
Kleban & Samor, P.C.
2425 Post Road
Southport, CT  06890
Fax No.:  203-259-9617
Email:  jelliot@klebn-samor.com

Sherman Acquisition II, LLP
Sherman Acquisition, LP
Sherman Financial Group, LLC
Alegis Group, L.P.
Alegis Group, LLC
Financial Recovery Services, Inc.

Timothy P. Creech, Esq.
Satzberg, Trichon
1818 Market Street
Philadelphia, PA  19103
Fax No.: 215.575-7688
Email:  tcreech@mstkw.com

Transunion LLC

Catherine Mary Ferrara-Depp
Jones Day
222 East 41st Street
New York, NY  10017
Fax No.:  212.755-7306
Email:  cmferraradepp@jonesday.com

Experian Information Solutions, Inc.

Michael S. O'Reilly
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Pennsylvania Plaza, 37th Floor
New York, NY  10019
Fax No.: 973-639-8348
Email: mo'reilly@gibbonslaw.com

Equifax

Arthur J. Sanders, Esq.
2 Perlman Drive, Suite 301
Spring Valley, NY  10977
Fax No.: 845-352-8131
Email:  asanders9@earthlink.net

North American Collection, Inc.

Bret A. Scher, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, NY  10017-5639
Fax No.: 212-490-3038
Email:  scherb@wemed.com

Wolfpoff & Abramson, L.L.P.

Robert A. Meyerson, Esq.
Forster & Garbus
500 Bi-County Boulevard
Farmingdale, NY  11735
Fax No.: 631-393-9490
Email:  rmeyerson@fgny.com

Forster & Garbus

Robert D. Goldstein                              Levitz Furniture Corporation
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY  10177
Fax No. 212-661-0989
Email: rgoldstein@ebglaw.com

Shoshana L. Gillers                              Household Bank (SB), N.A.
Wilmer, Cutler & Pickering
399 Park Avenue, 30th Floor
New York, NY  10022
Fax No.: 212-230-8888
Email:  shoshana.gillers@wilmerhale.com